IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CASIE and ED BYNUM, as parents and next friend of M. B., a minor, <br><br>  Plaintiffs, <br><br> v. <br><br> INDEPENDENT SCHOOL DISTRICT NO. 1 OF KIOWA COUNTY OKLAHOMA, a/k/a HOBART HIGH SCHOOL, <br><br>  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. CIV-23-1003-PRW |

**ORDER**

Before the Court is Defendant's Motion to Dismiss (Dkt. 3). The matter is fully briefed, and for the reasons that follow, the Motion (Dkt. 3) is **GRANTED IN PART** and **DENIED IN PART**.

*Background*

This case concerns allegations of an incident of sexual harassment of a student, M.B., by his coach, and sexual harassment and retaliation by other students in response to the incident. According to the Complaint, in early 2022, the basketball coach for Hobart High School, Jeff Tompkins ("Coach Tompkins"), was addressing his team after the conclusion of an away game. While explaining to one of the players why his conduct resulted in a technical foul, Coach Tompkins stated "There's a lot of things you can't do.

1

Like I can't make him suck my d*ck." While making this statement, Coach Tompkins made thrusting gestures towards M.B.'s mouth. Following this incident, M.B. was ridiculed by other students on the bus ride home with statements including "d*ck sucker" and "Coach's little b*tch." Plaintiffs, M.B.'s parents, contacted the Hobart High School principal, Mark Harmon, the next morning. But the harassment of M.B. by other students did not subside. He continued to face similar harassment from other students, along with physical threats.

At the next home game three days later, Coach Tompkins was not present. But his wife entered the locker room and made a statement regarding her husband potentially losing his job based on the incident with M.B. M.B. was again taunted and threatened by fellow students. Plaintiffs again contacted Principal Harmon, but were told that there was nothing he could do about the harassment and threats to M.B. The Complaint does not detail where Coach Tompkins was following the initial incident, but it alleges that Coach Tompkins returned to school the following week and walked by M.B. in the hallway. Nothing was said by Coach Tompkins, but other students again taunted M.B., saying "your boyfriend is back." Plaintiffs contacted the superintendent of Hobart High School, Cathy Hunt. She told Plaintiffs and M.B. that Coach Tompkins' behavior was not sexual, and so she would not give him a paid vacation. Coach Tompkins resigned from being the boys' basketball coach a week later.

Yet, the other students' harassment of M.B. continued. Students created photos of M.B. with his "head in compromising situations" and then shared them with other students and on social media. After no action was taken by the school district, M.B. transferred out

of Hobart Public Schools. Plaintiffs allege that even after M.B. transferred to a new school, he was harassed by Hobart High School students when his new basketball team played against Hobart.

Plaintiffs brought this action in the District Court of Kiowa County against Independent School District No. 1 of Kiowa County (the "District"). The Complaint lists three causes of action: alleging (1) violations of Title IX, (2) deprivation of constitutional rights in violation of 42 U.S.C. § 1983; and (3) negligence and negligence per se. Defendant District removed to this Court on the ground of federal question jurisdiction over the Title IX and § 1983 claims, and supplemental jurisdiction over the state law claim. The District then filed this present Motion to Dismiss (Dkt. 3).

### *Legal Standard*

In reviewing a Fed. R. Civ. P. 12(b) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[1] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[2] While factual allegations are taken as true, a court need not accept mere legal conclusions.[3] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough.[4]

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[3] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[4] *Id.*

*Analysis*

**I.     Title IX Claims**

Title IX requires that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."[5] School districts can only be liable for their own misconduct, so to allege a violation of Title IX against a school district, a plaintiff must allege facts showing "the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school."[6] Plaintiffs argue that they have sufficiently pleaded facts supporting claims against the District for both teacher-on-student sexual harassment and peer-on-peer sexual harassment and retaliation.

    A.  *Peer-on-Peer Sexual Harassment and Retaliation*

A funding recipient can be liable under Title IX for its deliberate indifference to one student's sexual harassment of another because such deliberate indifference "constitute[s] intentional discrimination on the basis of sex."[7] Likewise, a funding recipient can also be

---

[5] 20 U.S.C. § 1681(a).

[6] *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1246 (10th Cir. 1999) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642–45 (1999)). *See Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1098 (10th Cir. 2019) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) and *Davis*, 526 U.S. at 640–43 (1999)).

[7] *Farmer*, 918 F.3d at 1098 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182 (2005) and citing *Davis*, 526 U.S. at 650).

liable for its deliberate indifference to student-on-student retaliatory harassment in response to a report of sexual harassment.[8]

As to Plaintiffs' peer-on-peer sexual harassment and retaliation claim, the District does not argue that the District lacked actual knowledge or that the District did not respond with deliberate indifference. And Plaintiffs have pleaded facts that plausibly support both elements. Rather, the District argues that Plaintiffs' claim falls short, because Plaintiffs have not sufficiently pleaded facts showing that (1) the conduct by other students was sufficiently "severe, pervasive, and objectively offensive," or (2) that M.B. was deprived of any educational benefits or opportunities. Plaintiffs, in response, argue that the District took no action whatsoever after being notified multiple times of the harassment and retaliation of M.B. by other students, and for this reason, M.B. left the district entirely by transferring to a new school.

Plaintiffs have pleaded sufficient facts that plausibly support that M.B. experienced severe, pervasive, and objectively offensive harassment and retaliation by other students after reporting the incident involving Coach Tompkins. Plaintiffs' Complaint alleges that M.B. was continually harassed by other students in response to his complaint about Coach Tompkins' inappropriate sexual conduct. Such harassment included calling M.B. derogatory sexual names, threatening to attack him, saying "your boyfriend is back" when

---

[8] *Doe v. Sch. Dist. No. 1, Denver, Colo*, 970 F.3d 1300, 1311 (10th Cir. 2020); *Jackson*, 544 U.S. at 173–74 ("Retaliation against a person because that person complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action.").

Coach Tompkins returned to school, and posting and sharing pictures on social media depicting M.B. "with his head in compromising situations."[9] As "matters of degree—such as severity and pervasiveness—are often best left to the jury," such determinations are not suitable for dismissal on the pleadings.[10] Thus, these facts are sufficient at least at the pleadings stage to show that M.B. was subjected to harassment and retaliation by his peers that was severe, pervasive, and objectively offensive.

Next, pleading a deprivation of access to the educational benefits or opportunities provided by the school does not require a plaintiff "to show physical exclusion," but rather requires pleading facts of harassment that "so undermines and detracts from the victims' educational experience, that the victim-student[ is] effectively denied equal access to an institution's resources and opportunities."[11] The District argues that Plaintiffs insufficiently pleaded facts alleging that M.B. was deprived access to any benefits or opportunities. As support for this argument, the District points out that Plaintiffs did not allege that M.B. had to quit basketball or had reservations about playing on the basketball team.[12] Plaintiffs' Complaint, however, alleges that "[a]fter continued harassment and no

---

[9] Pls.' Compl. (Dkt. 1-1), ¶¶ 17, 18, 22, 24, 27.

[10] *Doe*, 970 F.3d at 1311–12.

[11] *Davis*, 526 U.S. at 651.

[12] The District also argues in its Reply that "conclusory statements that a school effectively forced a student to transfer are insufficient to allege a materially adverse action required for a claim of relation," citing *S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 806 (W.D. Pa. 2016). *See* Def.'s Reply (Dkt. 11), at 2. But Plaintiffs are not claiming that the *District* retaliated against M.B., so whether this conduct can rise to the requisite level to hold a District liable for its own retaliatory conduct is not applicable in this context.

6

action by Hobart, M.B. transferred to a different school" and that "Plaintiffs' minor son was basically forced out of the District due to the unrelenting harassment and retaliation he suffered following Tompkins' initial harassment and the District's actions and inactions in preventing it or remedying it in a reasonable fashion."[13] The Court is satisfied that Plaintiffs have sufficiently pleaded facts to plausibly allege that M.B. was effectively denied access to the District's resources and opportunities, as Plaintiffs have pleaded that M.B. left the district entirely due to the harassment and retaliation.

These facts taken as true are sufficient to state a claim for peer-on-peer sexual harassment and retaliation under Title IX.

### B. Teacher-on-Student Sexual Harassment

Plaintiffs have not, however, adequately pleaded a claim for the District's deliberate indifference to teacher-on-student harassment. The pleading requirements applicable to a funding recipient's deliberate indifference to student-on-student harassment also apply to teacher-on-student harassment.[14] And the Supreme Court has recognized that harassment at the hand of a teacher is more likely to violate Title IX than harassment at the hands of other students.[15]

While the District's argument for dismissal of this claim is couched in terms of harassment by the District itself rather than the District's deliberate indifferent response to

---

[13] Pls.' Compl. (Dkt. 1-1), ¶¶ 29, 68.

[14] *See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (internal citations omitted). *See also Dimas v. Pecos Indep. Sch. Dist. Bd. of Educ.*, No. 23-2064, 2024 WL 1881076, at *9 (10th Cir. Apr. 30, 2024) (unreported).

[15] *See Davis*, 526 U.S. at 653.

Plaintiffs' complaints of teacher-on-student harassment,[16] the District argues that (1) Plaintiffs' Complaint does not allege conduct by teachers or the District severe enough to constitute harassment under Title IX, and (2) Plaintiffs do not allege facts attributing M.B.'s decision to transfer out of the district to any harassment by a teacher or the District itself. Plaintiffs argue that they have sufficiently pleaded facts supporting a claim against the District for its deliberate indifference to teacher-on-student harassment.

Plaintiffs have not pleaded facts demonstrating that M.B. was deprived of access to any educational benefits or opportunities due to harassment by a teacher, and even assuming without deciding that Coach Tompkins' conduct rises to the level of sexual harassment, it could not be construed as pervasive. Besides facts detailing a single—albeit undoubtedly inappropriate—incident where Coach Tompkins stated that he could not make M.B. "suck his d*ck," and one comment made by Coach Tompkins' wife to the basketball team after a game that "[Coach Tompkins] talks all religious and he says something for two seconds, and he could potentially lose his job," Plaintiffs allegations of pervasive harassment and retaliation involve conduct attributable to other students. Further, Plaintiffs allege that M.B.'s transfer out of the district was due to other students' continued harassment and retaliation.[17] Thus, Plaintiffs have failed to plead sufficient facts that

---

[16] Plaintiffs' Complaint does not appear to allege claims against the District itself for harassment or retaliation, and Plaintiffs' Response further clarifies that Plaintiffs are seeking to impose liability for the District's deliberate indifferent *response*. See Pls.' Resp. (Dkt. 8), at 9–10.

[17] Pls.' Compl., ¶ 68.

8

plausibly support imposing liability on the District for its deliberate indifference to teacher-on-student harassment under Title IX.

## II.     42 U.S.C. § 1983 Claims

Plaintiffs next allege that the District violated M.B.'s constitutional rights, in violation of 42 U.S.C. § 1983. Section 1983 provides that any person acting under color of law who deprives a United States citizen of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."[18] Local government entities such as the District are "persons" subject to suit under § 1983.[19] As local government entities, principals of municipal liability apply to school districts.[20] Alleging a claim against a municipality requires both a harm to the plaintiff caused by a constitutional violation, and liability of the municipality for that violation.[21] Establishing municipal liability for the violation requires a plaintiff to "demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority."[22] Absent an official policy, the plaintiff must show that the discriminatory practice is so

---

[18] 42 U.S.C. § 1983.

[19] *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1129 (10th Cir. 1993) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

[20] *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1249 (10th Cir. 1999); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010).

[21] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (citations omitted).

[22] *Murrell*, 186 F.3d at 1249 (citing *Randle v. City of Aurora*, 69 F.3d 441, 446–50 (10th Cir. 1995)).

prevalent that it constitutes "custom or usage."[23] There can be no municipal liability of a government entity "for an injury inflicted solely by its employees or agents."[24]

As Plaintiffs solely bring claims against the District, Plaintiffs must sufficiently allege facts establishing municipal liability under *Monell*.[25] The District argues that Plaintiffs have failed to do so. Plaintiffs' Complaint includes eight conclusory statements that the District had a policy, custom, or practice of not implementing adequate policies or conducting training.[26] The Complaint further alleges that these policies, customs, and practices were "the moving forces" of M.B.'s sexual harassment and retaliatory harassment.[27] But Plaintiffs' Complaint is void of any factual support for these conclusory allegations. Such bare assertions are insufficient to state a claim establishing district liability on the basis of an official custom or policy.[28]

In their Response, Plaintiffs argue that they have also successfully pleaded facts demonstrating discriminatory actions taken by officials with final policy making authority, because both the school principal and superintendent were informed of the harassment and retaliation experienced by M.B. but failed to take any action in response, leading to a

---

[23] *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009); *Brammer-Hoelter*, 602 F.3d at 1189.

[24] *Monell*, 436 U.S. at 694.

[25] *Brammer-Hoelter*, 602 F.3d at 1189. *See Monell*, 436 U.S. at 690–91.

[26] Pls.' Compl. (Dkt. 1-1), ¶ 50(a)–(h).

[27] Pls.' Compl. (Dkt. 1-1), ¶ 50.

[28] *See Twombly*, 550 U.S. at 555. *See also Murrell*, 186 F.3d at 1249.

deprivation of M.B.'s bodily integrity and security.[29] The District argues that only the Board can be considered an official with policy making authority, and the conduct detailed in the Complaint does not constitute a deprivation of bodily integrity or security.

While a superintendent or principal is not foreclosed from being considered an official with final policymaking authority under Tenth Circuit precedent, [30] Plaintiffs' Complaint does not contain any facts alleging that here, Principal Harmon and Superintendent Hunt possessed any final policy making authority. Such an assertion is required to allege municipal liability "on the basis of a decision specific to a particular situation."[31] So Plaintiffs' Complaint does not state a claim for municipal liability on this basis, either.

Plaintiffs' also argue that they have adequately alleged a claim based on a danger creation theory. Such a claim requires pleading facts alleging that: "(1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that

---

[29] Pls.' Resp. (Dkt. 8), at 18.

[30] *See Doe v. Indep. Sch. Dist. No. 93 of Pottawatomie Cnty., Okla.*, No. CIV-23-473-R, 2023 WL 9018380, at *2 (W.D. Okla. Dec. 29, 2023); *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 456–57 (10th Cir. 2010) (unpublished).

[31] *Murrell*, 186 F.3d at 1250 (citations omitted); *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1302–03 (D. Kan. 2006).

risk; and (6) such conduct, when viewed in total, shocks the conscience."[32] The District argues that Plaintiffs have failed to plead any facts indicating that the District took any affirmative action to place M.B. in danger. The Court agrees. Plaintiffs have failed to plead facts alleging that the District took any affirmative action that created or increased any risk of danger to M.B.[33] Plaintiffs' Complaint does not allege a plausible claim under the danger creation theory.

Plaintiffs have not stated a plausible claim alleging constitutional deprivations in violation of § 1983.

### III.  Negligence Claims

Plaintiffs' final cause of action against the District is under state law for negligence and negligence per se. A claim for negligence under Oklahoma law requires the plaintiff to plead facts alleging "a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform that duty; and an injury to the plaintiff resulting from the failure of the defendant."[34] These same elements apply to a claim for negligent infliction of emotional distress, as Oklahoma classifies negligent infliction of emotional distress as negligence rather than an independent tort.[35] Damages for both physical and

---

[32] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008) (citing *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003)).

[33] *See Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994); *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002); *Doe*, 2023 WL 9018380, at * 4.

[34] *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 916 P.2d 241, 245 (Okla. 1996) (citations omitted).

[35] *Wilson v. Muckala*, 303 F.3d 1207, 1212 (10th Cir. 2002) (applying Oklahoma law).

mental injuries are available under Oklahoma law, but mental damages alone are insufficient.[36]

The District argues that it did not owe a duty to M.B., supporting this contention with facts in Plaintiffs' Complaint regarding social media posts and conduct occurring after M.B. transferred out of the district. But Plaintiffs' Complaint alleges much more than just those instances. Plaintiffs have pleaded sufficient facts to allege that the District owed a duty and breached that duty.[37]

However, the District also argues that Plaintiffs cannot allege a negligence claim against the District without pleading any facts indicating that M.B. sustained any sort of physical injury. Plaintiffs contend that the Court cannot dismiss Plaintiffs' negligence claim due to Plaintiffs' failure to plead any physical injury because this would require the Court to make factual determinations on the pleadings. But it is the role of the Court at this juncture to evaluate whether Plaintiffs have alleged sufficient facts to plausibly state a claim for negligence under Oklahoma law.[38] And negligence under Oklahoma law, whether pursued under a common law theory of negligence or negligence per se,[39] requires

---

[36] *Ellington v. Coca Cola Bottling Co. of Tulsa, Inc.*, 717 P.2d 109, 110–11 (Okla. 1986) ("Upon proper proof, the plaintiff may recover for mental anguish where it is caused by physical suffering and may also recover for mental anguish which inflicts physical suffering.").

[37] *See Brewer v. Murray*, 292 P.3d 41, 48 (Okla. Civ. App. 2012); *J.W. v. Indep. Sch. Dist. No. 10 of Dewey Cnty.*, 500 P.3d 649, 666 (Okla. Civ. App. 2021).

[38] *Twombly*, 550 U.S. at 555.

[39] *See Howard v. Zimmer, Inc.*, 299 P.3d 463, 467 (Okla. 2013) ("Liability per se enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach

Plaintiffs to plead facts plausibly alleging at least some sort of physical manifestation resulting from the alleged mental injuries.[40] Plaintiffs have not done so. Thus, Plaintiffs have failed to plead sufficient facts to support a claim for negligence under Oklahoma law.[41]

The District also argues that to the extent that Plaintiffs' claims are based on the District's negligent hiring, training, supervising, or retention of a teacher, the District is immune from liability due to the discretionary function exemption of the Oklahoma Governmental Tort Claims Act ("OGTCA").[42] Plaintiffs argue that their claims are not barred, and the OGTCA does not apply to all of the District's employment decisions. Courts have consistently held that while the Oklahoma Supreme Court hasn't directly ruled on the matter, hiring, training, supervising, or retention decisions are discretionary, and as such, fall within the discretionary exemption of the OGTCA.[43] Thus, to the extent that Plaintiffs wish to amend their Complaint to allege negligence on the basis of hiring,

---

of duty in a negligence action, so that only causation and damages need be proved." (citations omitted)).

[40] *Wilson*, 303 F.3d at 1213 ("Oklahoma law obligated [Plaintiff] to provide proof of *some* physical injury, whether incurred contemporaneously with her emotional injury, or whether as a direct consequence of her emotional injury." (emphasis in original)).

[41] The District also argues in its Motion that *if* Plaintiffs reframe their argument into a claim for intentional infliction of emotional distress, District is immune under the GTCA. But Plaintiffs have not alleged a claim for intentional infliction of emotional distress, so it is unnecessary for the Court to address this argument now. *See* Def.'s Motion (Dkt. 3), at 20.

[42] 51 O.S. § 155(4).

[43] *See Doe*, 2023 WL 9018380, at *5 (collecting cases); *Higginbottom v. Mid-Del Sch. Dist.*, No. CIV-15-1091-D, 2016 WL 951691, at *3 (W.D. Okla. March 9, 2016) (same).

training, supervision, or retention, such amendment would prove to be futile.[44] The Court agrees, however, with Plaintiffs that this exemption does not apply to Plaintiffs' claims based on any negligence stemming from the District's decision not to investigate after receiving complaints from M.B. Nonetheless, as described above, Plaintiffs have not pleaded facts to plausibly support that M.B. suffered any sort of physical injury.

## *Conclusion*

For the reasons set forth above, Defendant District's Motion (Dkt. 3) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The first cause of action of the Complaint (Dkt. 1-1), to the extent that it rests on the District's deliberate indifference to student-on-student sexual harassment and retaliation, is plausibly alleged and may proceed.

2. The first cause of action of the Complaint (Dkt. 1-1), to the extent that it rests on the District's deliberate indifference to teacher-on-student sexual harassment, is **DISSMISSED WITHOUT PREJUDICE.**

3. The second cause of action of the Complaint (Dkt. 1-1) is **DISMISSED WITHOUT PREJUDICE**.

4. The third cause of action of the Complaint (Dkt. 1-1) is **DISMISSED WITHOUT PREJUDICE**.

Plaintiffs may move to amend their Complaint within thirty days of this Order.

---

[44] *See, e.g.*, *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 561–62 (10th Cir. 1997) (leave to amend may be denied where such amendment would be futile).

**IT IS SO ORDERED** this 27th day of September 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE